UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
In re

Raymond Stalica — Case No. 06-12124 K

Debtor
---------------------------------------------------------------

OPINION AND ORDER

Before the Court is the “hanging paragraph” issue, so well explained in such cases as *In re Williams*, 2007 WL 2122131 (Bankr. E.D. Va. Jul. 19, 2007), *In re Quick*, 2007 WL 1941749 (B.A.P. 10th Cir. Jul. 5, 2007), *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007) (all collecting cases explaining majority and minority views regarding the effect of § 1325(a) under BAPCPA on the deficiency claim of a secured lender when the debtor surrenders a 910 day vehicle).

At the core, the question is whether the option of surrender so implicates § 506 that the hanging paragraph cannot be ignored. If it does not, then there is nothing in the hanging paragraph that changes pre-BAPCPA law regarding surrender of a 910-day vehicle.

The majority view is that the lender could have no allowed secured claim at all but for § 506, and that that fact plus the “hanging paragraph” leaves no deficiency claim. The minority view is that either state law, or provisions of the Code other than § 506 give rise to both the secured claim and the unsecured deficiency claim.

Before addressing this question head-on, this writer must respectfully disagree with the notion that rights of the creditor are fixed as of the beginning of the case. (See, for example *In re Williams*, 2007 WL 2122131, *8 (Bankr. E.D. Va. Jul. 19, 2007), stating that once

the debtor objects to the deficiency claim the "[c]ourt must determine the amount of claims 'as of the date of filing of the petition,' not as of the date the collateral is sold."). That view actually begs the question, and also defies reason. The real question is "What claim is being adjudicated at the time of objection in a surrender case?" It is clear to this writer that it is the unsecured deficiency claim, not the secured claim that has been satisfied by surrender. Further, it is not logical to ignore post-petition payments (e.g. "adequate protection" payments) to secured creditors.[1]

It should be beyond doubt, therefore, that the right of the creditor to have a claim allowed must take cognizance of what has occurred in the case. (See also "reconsideration" of claims allowance or disallowance, "for cause;" 11 U.S.C. § 502(j).)

As so refined, then, what must be examined is whether § 506 has application at all at the moment of surrender of the collateral. In the Court's view, the majority rulings confuse the "existence" of a secured claim with the "allowance" or "valuation" of a secured claim.

For present purposes, surrender always occurs prior to or incident to confirmation. (Surrender during the tenure of a confirmed plan presents different questions. See, for example, *In re Taylor*, 243 B.R. 226 (Bankr. W.D.N.Y. 2000).)

Between the date of the petition and the earlier of (1) the time the filed claim is "deemed allowed" under § 502(a), and (2) an order of the Court regarding § 502(b) allowances or disallowance, the secured claim surely "exists." Section 101(5)(A) says it does, as does logic.

---

[1]Indeed, what of "critical vendor" payments to unsecured creditors in a Chapter 11 case? Are they to be ignored?

And the "existence" of a secured claim is a matter of state law, for current purposes.

The courts that hold that § 506 was somehow "applied" when the debtor surrendered the vehicle, ignore that fact. Section 506 certainly informs the decision to surrender, but it not "applied" at that time.

It is only when a deficiency claim that follows upon surrender is either objected to or is "deemed allowed" that any of the claims provisions of Chapter 5 apply. At such moment, only an unsecured claim is before the Court - - the secured claim's existence was recognized by the debtor and satisfied by surrender. Section 506 simply tells us that the estate may not be burdened by a further secured claim for the difference between what the lienor got for the vehicle, and its fair market value. (Auto auctions, in general, do not yield such a value, as explained by *Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 961-962 (1997)).

In almost every Chapter 11, 12 and 13 case, § 506 serves as a backdrop against which business decisions and events such as "adequate protection" agreements are reached, but that does not mean that § 506 "rights" were "adjudicated." Similarly, § 365 "rights," or § 502 limitations on landlord claims, or the priority provisions of § 507, or the massive powers of orders of "confirmation," are not "adjudicated" while the administration of the estate proceeds in a manner that is "informed" by the substance of those provisions. (Certainly, neither § 502 nor § 506 is applied at the time that each consensual adequate protection payment is made, for example.)

It is respectfully submitted that the majority view is thus flawed. And even if a debtor invoked § 506 at the outset of a case, candor would be required as to the prospect of

surrender. Section 506 and its predecessor, § 57h of the 1898 Act, have been unequivocal for 80 years - - the price obtained in the actual sale that is to occur will satisfy the secured claim, and only an unsecured claim will remain to burden the estate, as to any deficiency. So § 506 has no use or application where neither "valuation" nor "allowance" are implicated because collateral is actually surrendered and sold.

Similarly, recent decisions adopting the majority view confuse the respective roles of state and federal law. They correctly note that the Bankruptcy Code trumps state-law rights. But that is true only as to instances of conflict. When all parties, including the trustee recognize state law rights, and collateral is abandoned to the lienholder, no bankruptcy law is implicated.

"Abandonment" is, of course, critical. Courts such as that in *In re Zehrung*, 351 B.R. 675 (W.D. Wis. 2006) and *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006) are certainly correct that a lift of stay does not, of itself, extinguish the estate's interest in the res for purposes of § 506. But lift of stay to sell or to foreclose does extinguish the estate's interest in the collateral, or else the lienor could not deliver good title. The estate retains a right to surplus funds, but, by definition, there are no surplus funds in a case implicating the issue before the Court.

Thus, in this writer's view, once the event of abandonment is considered, a decision by the Seventh Circuit brings full closure to the question presented here, and upholds the minority view. *In re Wright*, 2007 WL 1892502 (7th Cir. Jul. 3, 2007) (Easterbrook, C.J.). This Court agrees with that court's statements as follows: first, that "[r]ights under state law

count in bankruptcy unless the Code says otherwise; and second that "[c]reditors don't need § 506 to create, allow or recognize security interests, which rest on [state] law [because] § 502 . . . [a] allows claims that stem from contractual debts . . . ." 2007 WL 1892502 at *4. When § 506 does not apply, as shown here, the "[f]allback under *Butner* is the parties contract . . . ." *Id.* The foregoing disposes of the mistaken assumption of the majority "[t]hat § 506 is the *only* source of authority for a deficiency judgment where the collateral is insufficient." *Id.* at *3.

It is clear to this writer that because surrender of collateral occurs without reference to § 506, the "hanging paragraph" and the § 1325(a)(5)(C) option of "surrender" are mutually exclusive, and the debtor may enjoy nothing from the existence of the "hanging paragraph" when the debtor opts to surrender the collateral.

The Debtor's objection to the unsecured deficiency claim of the lender in the case at bar is overruled.

SO ORDERED.

Dated: Buffalo, New York
August 24, 2007

s/Michael J. Kaplan

U.S.B.J.